UNITED CIGAR-WHELAN STORES CORPORATION, a corporation of the State of Delaware, *v.* DELAWARE LIQUOR COMMISSION.

(*August* 14, 1940.)

RODNEY and SPEAKMAN, J. J., sitting.

*John W. Huxley, Jr.,* for appellant.

*William S. Potter* for Delaware Liquor Commission.

Court of General Sessions for New Castle County, May Term, 1940.

Rodney, J., delivering the opinion of the Court:

It being admitted that the petitioner-appellant conducted a cigar store at the premises for which a license was sought we shall not, of course, consider what does, in fact, constitute a cigar store.

1. As to the first objection we shall but briefly consider the question that the cited act is violative of the constitutional provisions that the subject of the act must be

embraced in its title. It will be readily seen that the title of the act prohibits the sale of alcoholic liquor "in Grocery Stores, Delicatessen Shops, or Cigar Stores" and it is contended that the purview or body of the statute is much broader and prohibits the sale of alcoholic liquor in the State of Delaware by any owner, lessee or manager of a grocery store, delicatessen shop or cigar store.

So often has the quoted provision of the Constitution been considered by this court that it is unnecessary to again restate its purpose or effect. It is sufficient to say that, under the Constitution, the title acts as a limitation on otherwise uncontrolled provisions of the body of the act, and any provisions of the purview clearly beyond or extraneous to the title cannot be valid. If we were now forced to consider the effect of sales of alcoholic liquor by owners, lessees or managers of cigar stores at places other than the cigar stores themselves, we might also have to consider as to whether this question could be raised by the appellant, for it is a general principle of law that only that person can raise a constitutional question who is, himself, affected by it. We turn, however, to the body of the act to determine its scope and meaning.

We think the words "conducting a grocery store, delicatessen shop or cigar store" are equally applicable to each of the stated relations of "owner, lessee or manager," and as we are given to understand that the present applicant is a lessee of a cigar store we shall confine our consideration to those facts.

We thus find that the statute says "on and after July 1, 1940, it shall be unlawful for any * * * lessee * * * conducting a * * * cigar store to sell or dispense alcoholic liquors in the State of Delaware." It must be admitted that the language used is not as clear

as might be desired, but our only duty is to ascertain the legislative intent. To ascertain this intent there may be called into play various rules of construction, including the rule that, if possible, some meaning must be attributed to all of the language of the statute. Now the question to be determined is whether the legislature intended to prohibit a lessee conducting a cigar store from selling or dispensing alcoholic liquor anywhere in the State of Delaware, or whether the sale or dispensing of such liquor was intended to be prohibited solely in the cigar stores so conducted by such lessee. If it was intended that the prohibition of sale should be state-wide in character it is very difficult, if not quite impossible, to attribute any reasonable meaning to be given to the qualifying word "conducting." It is quite impossible for us to conceive that any valid objection to an otherwise legal right to sell liquor could be based solely on the fact that such person conducted a cigar store in another county, and perhaps many miles from the place where the liquor is to be sold.

For the clarifying of the ambiguity in the statute resort may be had to many sources, including the title of the act itself, and the relation of the title to the purview of the statute may be briefly considered.

Originally, at common law, the title of the act was no part of the act and, indeed, it is said that early English statutes had no titles until such titles were framed for clerical reference. At an early date Chief Justice Marshall said in *United States v. Fisher*, 2 *Cranch*. 358, 386, 2 *L. Ed.* 304:

"Where the mind labours to discover the design of the legislature, it seizes everything from which aid can be derived; and in such case the title claims a degree of notice, and will have its due share of consideration."

There can be no question that the uniform current of

authority today is that when any ambiguity exists in the purview of a statute the title may be resorted to as an aid in ascertaining the legislative intent.

*Crawford on Statutory Construction, p.* 357; 1 *Cooley's Const. Lim.* 291; 25 *R. C. L.* 1031; 59 *C. J.* 1005.

The foregoing principle finds support in almost all jurisdictions including those, like the United States Government, where the Constitution does not require that the subject of an act shall be expressed in its title. The title of an act has often been accorded additional and particular significance in considering ambiguities in statutes in those jurisdictions where, by reason of constitutional provisions, the subject of the act must be expressed in its title and the act can contain nothing not so expressed in the title and not germane to such expression. The cases are too numerous to require citation. 59 *C. J.* 1005; 25 *R. C. L.* 1031; *American Digest System, Statutes,* 211. See 37 *A. L. R.* 948, in which is an exhaustive note.

If the purview of the act could be capable of two constructions, one of which would be violative of the title and render the act void, and the other construction would be in conformity with the title, the first construction must be rejected.

Turning to the title of the present act we find that the then existing law was amended by prohibiting the sale of alcoholic liquor in grocery stores, delicatessen shops or cigar stores. The legislative intent recognizable, we think, in the body of the act is, by reference to the title, made entirely clear and free from doubt.

We think the act in question is not, on the ground urged to us, violative of the Delaware Constitution.

As to the second question, it is contended that the Legislature of this State, in the act in question, has adopted an arbitrary and unreasonable classification of persons prohibited from the sale or dispensing of alcoholic liquors, and that thus this appellant is deprived of those equal rights enjoyed by persons in other occupations.

██ ██ Now the control and supervision of the traffic in alcoholic or intoxicating liquors comes peculiarly and particularly within the general police powers of a State, and the Legislature has plenary power to require occupational licenses before anyone is qualified to deal in such liquor. When the Legislature indulges in a classification of persons in connection with any occupational license, such legislative classification is entitled to a very high measure of judicial support. The classification must be clearly arbitrary and capricious before a court can interfere with a legislative judgment. If any state of facts can reasonably be conceived as sustaining the classification, the existence of such facts must be assumed as the basis of the legislative action. When the legislative classification is clearly arbitrary and capricious and based on no tangible or substantial distinction, then, but not until then, can the courts interfere.

 These are familiar principles of construction to be found in every treatise on constitutional law. They apply with accentuated force in connection with licenses or permits for the sale of alcoholic liquor. As the license, when granted, does not constitute a vested and irrevocable right to sell liquor (*Law & Order Society v. Pierce,* 6 *Boyce* (29 *Del.*) 589, 102 *A.* 62), so, too, there exists no vested right to obtain the license which may not be reasonably circumscribed by the Legislature in the exercise of the general police power. The right to sell liquor is not an inalienable right guarded by the Constitution, nor one of the privileges

and immunities of citizens of the United States. *Crowley v. Christensen*, 137 *U. S.* 86, 91, 11 *S. Ct.* 13, 34 *L. Ed.* 620.

As the Legislature has the power to deny to all individuals in this State the right to sell alcoholic liquor and to control the traffic through state-owned stores, so it has the right to limit sales of liquor in such reasonable manner as the public welfare requires. In the absence of clearly arbitrary or capricious classification we cannot say that the designation by the Legislature of certain places where the sale of intoxicating liquor is deemed prejudicial to the public welfare and therefore prohibited, is not a reasonable control of the traffic in liquor based upon legislative experience, or the exercise of legislative judgment. We are here solely concerned with the question as to whether the Legislature may not say that alcoholic liquor shall not be sold in a cigar store. We, of course, do not know the reasons which prompted the legislative action. If the Legislature thought of a modern cigar store as a place often patronized by youth or adolescents, where considerable groups are, at times, accustomed to congregate, and that the display there of a stock of liquor would not be conducive to the public good but, on the contrary, that liquor should not there be sold, it is difficult for the court to say that the legislative judgment shall not be effective. The judgment of the court may not be substituted for that of the Legislature, and it is quite immaterial that the act in question may not seem most likely to accomplish the desired end, and it is equally immaterial that the wisdom of the legislation may be open to question.

In *City of Chicago v. Netcher*, 183 *Ill.* 104, 55 *N. E.* 707, 48 *L. R. A.* 261, 75 *Am. St. Rep.* 93, the Supreme Court of Illinois, in 1899, held invalid an ordinance which made it unlawful for any person, firm or corporation to have exposed for sale or to sell any intoxicating, malt or

fermented liquor in any place of business where any dry goods, clothing, jewelry or hardware .was kept or exposed for sale.

In *Great Atlantic & Pacific Tea Co. v. Mayor & Com'rs of City of Danville,* 367 *Ill.* 310, 11 *N. E.* 2d 388, 390, 113 *A. L. R.* 1386, the same court in Illinois in 1937 again considered the validity of an ordinance concerning the prohibition of the sale of liquor. The ordinance provided for a Class B license allowing the sale of beer, ale and porter having an alcoholic content not exceeding 20 per cent by weight, such malt beverage to be sold in bottles or sealed metal containers, for consumption on the premises where sold. The ordinance also provided

"In the interest of public policy and morals no retail liquor license shall be granted to any firm, corporation or person whose principal business is the sale at retail of grocery and/or meat products."

The court held the ordinance a valid exercise of police power entrusted to the municipality. The court distinguished the *Netcher case, supra,* on the ground that in the *Netcher case* the prohibition was general, while in the later case the license would have permitted the sale of liquor for consumption on the premises. It would seem, however, that under the general police power the control of a State Legislature over traffic in intoxicating liquors is a general control, and not limited to a consideration as to whether the proposed sale be made for consumption on or off the premises. Another distinction appears with reasonable clearness. The later case considered an ordinance clearly passed "in the interest of public policy and morals" in the regulation of the sale of liquor. In the *Netcher case* it appears that the ordinance was passed for the mere curtailment of department stores, and the court in its conclusion stated that the protection of the public

against the evils arising from the sale of intoxicating liquor "was not the object of the ordinance" [183 *Ill.* 104, 55 *N. E.* 709, 48 *L. R. A.* 261, 75 *Am. St. Rep.* 93], thus removing the general police power as the basis of the ordinance.

In *Jacobs Pharmacy Co. v. City of Atlanta*, (*C. C.*) 89 *F.* 244, 245, the court sustained an ordinance making it "unlawful to sell liquors at wholesale or retail in connection with drugs or in drug stores." The court held that the right to sell liquor was not a privilege or immunity protected by the 14th amendment, and that a license holder could sell liquor in any place other than a drug store or in connection with drugs, and that such classification was a legitimate exercise of police power. Such is our construction under the first phase of this case. See, also, *Tittsworth v. Akin,* 118 *Fla.* 454, 159 *So.* 779. In *Peer v. Board of Excise Commissioners,* 70 *N. J. L.* 496, 57 *A.* 153, the validity of a statute seems to have been assumed, which prohibited the issuance of a license to sell liquors by less measure than one quart in any place in which a grocery or other mercantile business is carried on.

Seeing no objection to the statute on either ground presented to us, and the action of the Liquor Commission being based upon the cited statute, the appeal must be dismissed, and the action of the Delaware Liquor Commission sustained.