108 A.2d 578 (1954)
In the Matter of Nellie Rickards CAIN, an incompetent person.
Orphans' Court of Delaware, Sussex.
October 13, 1954.
Robert W. Tunnell, of Tunnell & Tunnell, Georgetown, for the guardian.
Houston Wilson, Georgetown, for Daniel G. Anderson, Jr., and Nicholas J. Chase.
*579 CAREY, Judge.
The sole question for determination is whether 12 Del.Code, § 3914 confers, expressly or by implication, the power upon this Court to direct a sale of real estate owned by a ward for whom a guardian has been appointed under that section.
The cited section contains five paragraphs. The first one designates those persons who may present a petition to this Court for the appointment of a guardian of the property of "any person, resident in this State, (who) by reason of advanced age or mental infirmity or physical incapacity is unable to manage and care for his property, and in consequence thereof is in danger of dissipating or losing such property, or of becoming the victim of designing persons * * *." The second paragraph provides for notice of a hearing. The third paragraph authorizes the Court to appoint a guardian of the property of such person, if satisfied that he is not able, for any of the reasons stated, properly to manage and care for his property.
The fifth paragraph provides that, from the time of the appointment, the ward shall be under disability to contract with regard to the property during the pendency of the guardianship.
The fourth paragraph reads as follows:
"In all matters relating to the appointment, qualification, duties and liability to account, such guardian shall be governed by all of the applicable provisions of law relating to the management of the estates of infants under guardianship and may be removed by the Orphans' Court upon application of the ward, or otherwise, whenever it appears that the guardianship is no longer necessary."
The Orphans' Court has only such jurisdiction as has been conferred upon it by the Legislature, although within the bounds of that jurisdiction it follows equitable principles. First National Bank v. Andrews, 26 Del.Ch. 344, 28 A.2d 676. I, therefore, agree with the contention now made to the extent that this sale cannot be valid unless the power to order it has been given to the Court by the Legislature. There being no express words to that effect in the statute, the Act must be analyzed to see whether the authority exists by implication. In other words, what was the legislative intent?
*580 Upon examining this Act, we discover that only two powers are expressly given the Court. The first is the right to appoint a guardian after making the prerequisite finding of incompetency; the second is the right to remove him whenever it appears that the guardianship is no longer necessary. Obviously, the Legislature could not have intended the Court's jurisdiction to be limited strictly to those two functions, for it expressly says that the law governing guardians of minors shall apply to guardians in these cases with respect to the appointment, qualification, duties and obligation to account. It would hardly be argued, for example, that this Court has no authority to fix the amount of the guardian's bond or to approve his account when filed. There comes to mind no valid reason to think that the Court cannot authorize the use of principal for the ward's necessities. Yet none of those powers is set forth in so many words. Clearly, then, some authority was necessarily intended to be conferred upon the Orphans' Court other than those expressly mentioned. Any other conclusion would be unreasonable and absurd.
Since some powers exist by necessary implication, the question then becomes one of ascertaining whether those implied rights go so far as to permit a sale of real estate. In determining this, we may examine the state of the law at the time the Act was passed, the mischief which the Legislature was seeking to correct, and the general purposes of the Act. Brown v. Wilmington & Brandywine Leather Co., 9 Del.Ch. 39, 74 A. 1105; Keedy v. Sterling Electric Appliance Co., 13 Del.Ch. 66, 115 A. 359; Lewis v. Du Pont, 2 Terry 347, 22 A.2d 832; E. I. Du Pont DeNemours & Co. v. Clark, 32 Del.Ch. 527, 88 A.2d 436. In doing so, it is permissible to go beyond the latest codification of the laws and to look at the Act as originally passed, including the title thereof. Monacelli v. Grimes, Del., 99 A.2d 255; United Cigar-Whelan Stores Corp. v. Delaware Liquor Commission, 2 Terry 74, 15 A.2d 442.
The statute now under consideration was first enacted and approved on June 21st, 1951. 48 Laws of Delaware, c. 365, p. 993. At that time, the Orphans' Court had statutory jurisdiction to appoint and supervise guardians of infants, including the power of selling the minor's real estate. 12 Del.C.Ch. 39. The Court of Chancery had jurisdiction to appoint and supervise trustees for insane persons, as that term was then defined, including the power to sell the incompetent's real estate. 12 Del.C.Ch. 35. This jurisdiction was purely statutory, not inherent. In re Reeves, 10 Del.Ch. 483, 94 A. 511. "Insane persons" (now called "`mentally ill persons'", see 49 Laws of Delaware, c. 57, p. 110) were defined as including every idiot, lunatic person, or person non compos mentis. 1 Del.C. § 302. There was no statute providing for the appointment of fiduciaries for those persons who, by reason of age, mental infirmity (as contrasted with insanity), or physical incapacity, were unable to manage their own property, yet who could easily become the victim of designing persons or were otherwise in danger of dissipating their property. There being no inherent power in any Court to make such appointments, no satisfactory method existed by which these people could be protected through the instrumentality of a fiduciary. The present act was designed to correct this deficiency in our laws by supplying a method by which a fiduciary might be promptly provided, appointed by and under the control of the Orphans' Court.
We may reasonably assume that to accomplish the purpose above mentioned, the legislative aim was the complete, rather than a partial, protection for the class of persons whose rights were to be guarded. The only reasonable inference suggested by the general purposes of the Act is that the Orphans' Court should have the same powers and should be guided by the same procedure which apply to guardianship of infants. Otherwise, the act would be woefully inadequate to accomplish the very object for which it was designed. Moreover, *581 under the argument advanced by the purchasers, an anomalous situation results. Paragraph 5 places the ward under disability to contract with regard to his property during the pendency of the guardianship. He cannot therefore sell his real estate regardless of his needs, and, if the Court cannot do so, the ward must either starve, live upon the charity of his family or friends, or become a public charge, even though he may own realty worth thousands of dollars.
Aside from the inference arising from the general purposes of the act and the practical difficulties which would result from a contrary interpretation, there is language both in the title and in the body of the statute which impels the same result. The title contains these words: "* * * The Orphans' Court * * * shall have authority to appoint a guardian for the property of such persons to be governed by the provisions of law relating to the management of the estate of infants under guardianship * * *." The fourth paragraph, quoted above, incorporates "all of the applicable provisions of law relating to the management of the estates of infants under guardianship" in matters relating to the guardian's appointment, qualification, duties and liability to act. It is difficult to read these words without reaching the same conclusion heretofore suggested.
Notwithstanding the absence of express language in the statute, I am of the opinion that the Court's powers under it are, by necessary implication, co-extensive with its jurisdiction over the estates of infants under guardianship, and include the right to order a sale of real estate when the facts justify doing so. In the present case, the facts fully warranted the finding that the sale was for the best interest and advantage of Mrs. Cain. It will, therefore, be confirmed upon presentation of a proper form of decree.