## INGRAM *v.* THE STATE.

No. 14050. MARCH 10, 1942.

*Wood & Spence,* for plaintiff in error.

*H. G. Vandiviere, solicitor-general,* contra.

GRICE, Justice. ■ The several grounds of constitutional attack may be considered together, since they are all based on the contention that the act transgresses those guarantees of personal liberty and security of property which are embedded in the fundamental law of the land.

It would be a mere affectation of learning to trace the sources of these guarantees so secured, to recount what it cost in order to have them recognized as the inalienable rights of freemen. It would likewise be a vain thing to attempt here to pay a tribute to the wisdom of our forebears who in the bill of rights fixed a limit to the powers of those who govern, and created a sort of holy of holies as the refuge of the individual, the portals of which no legislative assembly has the power to enter. It is universally recognized that neither the government created by the union of the States, nor the State government, nor both combined possess absolute sovereignty over the individual, but that there are certain powers which the people, the source of all sovereignty, have never entrusted to any ruler or set of rulers, and have never surrendered them, and are retained by each individual, with the result that within this limited sphere all legislation which seeks to destroy or to a certain extent to control these inherent, inalienable rights of the individual, is null and void.

There are, however, few if any rights, although enumerated in what is generally referred to as the bill of rights, that are in all situations and under all circumstances free from all limitation, restriction, and qualification whatever. These rights in some cases are affected by the principle contained in the maxim salus populi suprema lex, which expression has been characterized by Judge Bleckley as the whole gospel of public policy condensed in a single text. *Green* v. *Coast Line. Railroad Co.,* 97 *Ga.* 15, 34 (24 S. E. 814). Following the statement in *Bramley* v. *State,* 187 *Ga:* 826, 834-835 (2 S. E. 2d, 647), that there are many occupations which

may be regulated for the promotion of the public welfare, a number of examples are given, taken from the decisions of this court. A public dance-hall, tourist camp, barbecue stand, boxing or wrestling arena, or place of amusement, all might well be considered as tending to affect the health, morals, and well-being of the people, and therefore as falling within the category of such as may be subject to regulation under the police power. While the maxim referred to above can not be used as a mere pretext for the curtailment of those constitutional safeguards upon which the plaintiff in error relies, still, in those limits where it does apply, it acts as a limitation on the rights of the individual which otherwise would be beyond the power of the legislature to regulate or circumscribe. When such is the case, the rights of the individual must yield to the safety of the whole; and in so doing, there is no infringement on any of those rights which are enumerated in the bill of rights. When a business, or the use to which property is put, comes within this sphere, it is not unusual that the law requires that a license be first obtained. This is but a recognition of the authority of the command that speaks through the maxim already quoted.

The gist of the constitutional attack is that the act seeks to empower the county authorities to arbitrarily compel a person to discontinue the operation of a lawful business, however inoffensive said business may be, without affording such person an opportunity to be heard. The language of section 2 of the act would seem to negative the idea that the county commissioners were given the power to act arbitrarily; for it is therein declared that they "shall have authority to grant or refuse such permission, or to grant the same for such time and under such regulations as they may deem proper for the public good." In *Thomas* v. *Ragsdale,* 188 *Ga.* 238 (3 S. E. 2d, 567), this court dealt with so much of the act approved February 3, 1938 (Ga. Laws, Ex. Sess. 1937-38, p. 103 et seq.), as is embraced in subsection (d) of section 9 thereof as declares that, "No license shall be granted by the revenue commissioner until the applicant has exhibited a license granted by the municipality, if the place of business to be conducted is within the corporate limits of a municipality, or by the governing authorities of the county where the place of business to be conducted is located, if such place of business is outside the corporate limits of a town or city, and the local authority issuing this license shall have full authority to

pass on the character, reliability, and other qualities of fitness before issuing such license." In that case this court held that the governing body of a county in which the sale of liquors had been legalized was vested with a wide discretion, and upon a refusal to exercise its discretion the courts would grant mandamus to require them to exercise it. While the two acts deal with different subject-matters, the one here involved conveys the idea of the use of discretion by the county authorities as clearly as did the one under consideration in the case above cited. Back of the decision in the *Thomas* case lies the assumption that a board of county commissioners is composed of upright and intelligent citizens. Created for the purpose of directing county affairs, it must, in the nature of things, be vested with broad discretionary powers. Presumably it will exercise its discretion wisely, honestly, and for the good of the county as a whole, and not in such manner as will bear unjustly or with discrimination against any single individual or any particular business. Whether if in any instance the commission did not act in accordance with these principles—if it acted fraudulently, arbitrarily, dishonestly, or was impelled in its act by some motive other than the protection of the welfare of the citizens, the applicant would be remediless, is not involved in the case now before this court.

In *Phillips* v. *Head*, 188 *Ga.* 511 (4 S. E. 2d, 240), a writ of mandamus was sought to compel the commissioner of Cobb County to issue to the plaintiff a permit to engage in the business of selling malt beverages, in pursuance of the act of March 23, 1935 (Ga. L. 1935, p. 73), and to grant permission for the conduct of a described business falling within the terms of the act of March 29, 1937 (Ga. L. 1937, p. 624), relating, among other things, to dance-halls, tourist camps, and barbecue-stands, and in which suit the plaintiff sought the additional relief of injunction. This court denied the relief sought, and with reference to the latter of the two acts, which is the one involved in the instant case, said: "Now as to the act of 1937. The plaintiff concedes in his petition that the business which he proposes to conduct falls within the provisions of this statute. By section 2 it is declared: 'Such commissioners of roads and revenues or other authority in charge of said counties shall have authority to grant or refuse such permission, or to grant the same for such time and under such regulations as they may

deem proper for the public good.' The businesses referred to in this act were evidently deemed by the legislature to be proper subjects for such regulation and authority, mainly because of their locations and consequent opportunities for evil associations and practices." In neither of the two cases, however, was the court called on to pass upon any challenge based on constitutional grounds.

*Cutsinger* v. *Atlanta*, 142 *Ga.* 555 (83 S. E. 263, L. R. A. 1915B, 1097, Ann. Cas. 1916C, 280), was a suit by one operating a rooming house or lodging house, against certain officers and employees of the City of Atlanta, in which an injunction was sought to prevent them from interfering with the plaintiff's business. It attacked the thirteenth section of the act approved August 19, 1912 (Ga. L. 1912, pp. 562, 573). That section reads as follows: "That the mayor and general council be and they are hereby authorized to regulate hotels, lodging-houses, dance-halls, rooming-houses, and similar places, and they are further authorized and empowered, by ordinance, to require all person or persons owning or operating such hotels, houses, or halls to apply for a license for the operation of same, and such license may be granted or refused in the discretion of the mayor and general council, and their action in the premises shall be final. For a violation of such ordinance or the operation without a license granted, as herein provided, any person or persons adjudged guilty thereof in the recorder's court shall be subject to a sentence to pay a fine of not exceeding five hundred dollars, or to work on the public works of the city for not exceeding thirty days." This court, referring to the section above quoted, held that if it be construed to mean that the municipal officers can use a reasonable administrative discretion in regard to the granting or refusing of the licenses mentioned (which are licenses under the police power), and that their action shall be final in the sense that no appeal lies to any other body or court for the purpose of reviewing their action, the provision will not be violative of the clauses of the State and Federal constitutions that no person shall be deprived of life, liberty, or property, except by due process of law. And it was further held that the provision should be so construed. In that case it was decided that the business of keeping a hotel, lodging-house, or rooming-house is one so far affecting the public health, morals, or welfare that it is competent for the legislature, in the exercise of the police power, to authorize municipal authorities

to require persons conducting such a business to obtain a license, against the contention that the act and the city ordinance passed thereunder were violative of certain constitutional guarantees, to wit, that "Protection to person and property is the paramount duty of government, and shall be impartial and complete" (Code, § 2-102), and that "No person shall be deprived of life, liberty, or property, except by due process of law" (§ 2-103). The opinion in the case last referred to contains a learned review and discussion of the authorities, not only pertinent to the exact issue there presented, but applicable as well to the direct question here involved. We shall not comment on the many decisions there cited and examined, or others more recent. If, as there decided, the business of keeping a hotel, lodging-house, or rooming-house is one so far affecting the public health, morals, or welfare that it is competent for the legislature in the exercise of the police power to authorize the municipal authorities to require persons conducting such a business to obtain a license, it must also be held that legislation requiring a license for the operation of a public dance-hall, boxing or wrestling arena or amusement place, tourist camp, and barbecue-stand, for money or profit, must be sustained under the police power.

That part of the act relative to a "place of amusement" is not so vague and indefinite that the same can not be made the basis of a criminal prosecution. The language is general, but not vague. It is broad in its terms, but not indefinite. Any place of amusement operated for money or profit, as specified in the statute and in the indictment, is sufficiently specific.

The demurrer was properly overruled.

*Judgment affirmed. All the Justices concur.*