# Ex parte LOUIS STRAUCH.

No. A-10426.   March 21, 1945.

(157 P. 2d 201.)

Irvine E. Ungerman and W. C. Henneberry, both of Tulsa, and T. Jack Tellegen, of Oklahoma City, for petitioner.

Randell S. Cobb, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., George Miskovsky, Co. Atty., and Norman Futor, Asst. Co. Atty., of Oklahoma City, for respondent.

John H. Miley, of Oklahoma City, amicus curiae.

PER CURIAM. Petitioner, Louis Strauch, has filed his application for writ of habeas corpus, alleging that he is being unlawfully imprisoned and restrained by George

Goff, sheriff of Oklahoma county. That such restraint is by reason of his having been convicted in the court of common pleas of Oklahoma county, Oklahoma, on the 15th day of July, 1943, where he was charged with the crime of selling beer in a tavern where dancing was permitted.

The statute under which petitioner was charged and convicted is Tit. 37 O. S. Supp. 1943 §§ 211 to 218, inclusive, and is as follows:

"§ 211. From and after the effective date of this Act (June 30, 1943), and subject to the provisions of Section 6 hereof (§ 216 this Tit.), it shall be unlawful for any person, firm, co-partnership, association, or corporation to sell or otherwise dispense beverages at retail containing more than one-half of one per cent ($\frac{1}{2}$ of 1%) of alcohol by volume and not more than three and two-tenths per cent (3.2%) of Alcohol by weight, on premises wherein public or private dancing is conducted or permitted, whether said dancing is under the same or different ownership and management. For the purpose of this Act the word 'premises' shall mean and include the real property or building, and any adjoining property connected thereto by any private passageway, on or in which such dancing is conducted or permitted.

"§ 212. From and after the effective date of this Act (June 30, 1943), and subject to the provisions of Section 6 hereof (§ 216 this Tit.) it shall be unlawful for any person, firm, co-partnership, association, or corporation, to sell, or otherwise dispense for consumption on the premises beverages containing more than one-half of one per cent ($\frac{1}{2}$ of 1%) of alcohol by volume and not more than three and two-tenths per cent (3.2%) of alcohol by weight at any place in this State outside the limits of any incorporated city and town where the public entrance or entrances to which place are within one thousand (1000) feet of the nearest public entrance to premises outside the limits of any incorporated city or town wherein public or private dancing is conducted or permitted.

"§ 213.   From and after the effective date of this Act (June 30, 1943), it shall be unlawful for any place licensed to sell beverages containing more than one-half of one per cent (½ of 1%) of alcohol by volume and not more than three and two-tenths (3.2%) per cent of alcohol by weight to sell such beverages for consumption on the premises between the hours of 12 o'clock midnight and 7 o'clock a. m. excepting Saturday nights when such beverages may not be sold between the hours of 2 o'clock a. m. and 12 o'clock noon on Sundays.

"§ 214.   Subject to the provisions of Section 6 hereof (§ 216 this Tit.) it shall be unlawful for any person, firm, co-partnership, association or corporation, from and after the effective date of this Act (June 30, 1943), to open a public or private dance hall:

"(1) In any incorporated city or town in any location, the entrance or entrances to which dance hall shall be within three hundred (300) feet, as pedestrians travel, of the nearest entrance to any place in which beverages, as defined in Section 1 of this Act (§ 211 this Tit.), are sold for consumption on the premises:

"(2) Outside the limits of any city or town in any location, the entrance or entrances to which dance hall shall be within one thousand (1000) feet, as pedestrians travel, of the nearest entrance of any place outside the limits of any incorporated city or town in which beverages, as defined in Section 1 of this Act (§ 211 this Tit.), are sold for consumption on the premises.

"§ 215.   No original or renewal license shall be issued, pursuant to the laws of this State, to any applicant for the sale of such beverages defined in Section 1 hereof (§ 211 this Tit.), at any place wherein the sale of such beverages is forbidden in Section 1 and Section 2 of this Act (§§ 211, 212 this Tit.).

"§ 216.   The limitations on the sale of Beverages, and issuance of licenses therefor, contained in Sections 1, 2 and 5 of this Act (§§ 211, 212, and 215 this Tit.), shall not be applicable to hotels legally licensed to sell such bever-

ages on the 15th day of March, 1943, nor as they relate to dancing in private homes, or to private dances conducted for recreational purposes and not for profit by bona fide lodges, posts, clubs, fraternal, benevolent, or charitable organizations; nor shall the provisions of this Act prevent the sale or licensing of the sale of such beverages in drug stores, cafes, or restaurants selling food for consumption on the premises, in which drug stores, cafes or restaurants dancing is not conducted or permitted.

"§ 217. Any person violating any provision of this Act shall be deemed guilty of a misdemeanor and upon conviction shall be punished by a fine of not more than five hundred ($500.00) Dollars or by imprisonment in the county jail for a term of not more than six (6) months, or by both such fine and imprisonment; and such violation shall be additional grounds for revocation of any license or permit for the sale of such beverages, as and in the manner provided by law.

"§ 218. If any section, sentence, clause or phrase of this Act (§§ 211 to 218 this Tit.) is for any reason held to be invalid, such decision shall not effect the validity of the remaining portions of this Act. The Legislature hereby declares that it would have passed this Act, and each section, sentence, clause or phrase thereof, irrespective of the fact that any one or more sections, sentences, clauses or phrases be declared unconstitutional."

It is contended by petitioner that the above statute, under which he was charged and convicted, is unconstitutional and void; and to uphold this contention, he presents, in his brief, four propositions, as follows:

"I. That the law under which the state attempts to prosecute this petitioner and upon which the prosecution and conviction was based is unconstitutional in that said law violates the Fourteenth Amendment to the Constitution of the United States of America.

"II. That the said law is unconstitutional and in violation of Article 2, Section 32 of the Constitution of the State of Oklahoma, in that it attempts to give to cer-

tain persons a monopoly as to the sale of beer where dancing is permitted.

"III. That the said law is in violation of the provisions of Article 2, Section 2, of the Constitution of the State of Oklahoma, in that said law deprives the petitioner herein of his inherent right to the enjoyment of his own industry.

"IV. That section 6 of the Act (Tit. 37 O. S. A. Sup. 1943 § 216) is clearly unconstitutional and that sections 1, 2, 4 and 5 (§§ 211, 212, 214 and 215), being clearly dependent on said section 6 (§ 216) in such a manner as to indicate that the Legislature would not have passed the same independently of said section 6 (§ 216), all of said sections should be held unconstitutional."

Briefs have been filed by petitioner, by the Attorney General for the state, and an amicus curiae brief by the Hon. John H. Miley, who represents certain parties interested in the validity of the statute above quoted; and reply briefs have been filed both to the answer brief of the state, and the amicus curiae brief.

When oral argument was presented, the question was raised as to whether this court should assume original jurisdiction in a habeas corpus proceeding to test the constitutionality of this statute, or whether the question should properly be presented by appeal from the judgment of conviction.

While the Criminal Court of Appeals does not look with favor upon testing the constitutionality of a statute by habeas corpus, nevertheless, it has the authority to pass upon the constitutionality of a statute in such a proceeding, and will exercise that authority where necessity exists and the public good demands. The Supreme Court has announced and followed the same rule.

In the case of Ex parte Herrin, 67 Okla. Cr. 104, 93 P. 2d 21, the application was for habeas corpus brought for the purpose of testing the barber law (Tit. 59 O. S. 1941 § 102). We assumed jurisdiction and rendered an opinion in the habeas corpus action on the merits, determining the constitutionality of the act.

The case of Herrin v. Arnold, 183 Okla. 392, 82 P. 2d 977, 119 A. L. R. 1471, was an original action in the Supreme Court of this State, seeking a writ of prohibition to test the constitutionality of the barber law, the same as in Ex parte Herrin, supra, and the Supreme Court assumed original jurisdiction and decided the case on its merits, upholding the constitutionality of the statute. See also Ex parte Wood and five other cases, 71 Okla. Cr. 200, 110 P. 2d 304; Vandervort v. Keen, 184 Okla. 121, 85 P. 2d 405; Shaw v. State, 76 Okla. Cr. 271, 134 P. 2d 999, 138 P. 2d 136; Wood v. State, 76 Okla. Cr. 89, 134 P. 2d 1021; Ex parte McNaught, 23 Okla. 285, 1 Okla. Cr. 260, 100 P. 27; Ex parte Wagner, 1 Okla. Cr. 148, 21 Okla. 33, 95 P. 435, 18 Ann. Cas. 197; Ex parte Cain, 1 Okla. Cr. 7, 20 Okla. 125, 93 P. 974; Ex parte Wade, 2 Okla. Cr. 100, 100 P. 35; Ex parte Simmons, 5 Okla. Cr. 399, 115 P. 380; Ex parte Wilson, 6 Okla. Cr. 451, 119 P. 596; Ex parte Gudenoge, 2 Okla. Cr. 110, 100 P. 39; Ex parte Johnson, 20 Okla. Cr. 66, 201 P. 533; Ex parte Smith, 24 Okla. Cr. 415, 218 P. 708; Ex parte Boyd, 24 Okla. Cr. 434. 218 P. 715; Ex parte Sales, 108 Okla. 29, 233 P. 186; In re Saddler, 35 Okla. 510, 130 P. 906, 44 L. R. A., N. S., 1195.

The question here involved is of importance to the state by reason of the fact that the act provides that licenses to sell beer where dancing is permitted on the premises shall be revoked, and further provides that new licenses shall not be issued to such places. It is therefore important to the state that the constitutionality of

this act be passed upon by this court so that the law enforcement agencies may know whether or not the same is constitutional, and act accordingly.

At the time of the oral argument, it was suggested that this was a matter for the determination of the Supreme Court, and not the Criminal Court of Appeals. An examination of the statute under consideration reveals that the act is one defining a criminal offense, and providing for a fine and imprisonment. The matter of the revocation of a beer license only arises after the penal offense has been committed, and is therefore purely incidental to the main provisions of the act. It has been the uniform holding of the Supreme Court that the construction placed upon criminal statutes by this court will be followed by that court. Ex parte Anderson, 33 Okla. 216, 124 P. 980; Hinkle v. Kenny, 178 Okla. 210, 62 P. 2d 621.

In the case of Ex parte Anderson, supra, Judge Williams, in rendering the opinion of the court, said:

"It is a settled policy of this court to follow the construction given to criminal statutes by the Criminal Court of Appeals, since the enforcement of such statutes must be in accordance with such construction.

"(a) The same rule applies as to the determination of the constitutionality of a criminal statute."

See, also, State ex rel. Ikard v. Russell, 33 Okla. 141, 124 P. 1092; Ex parte Buchanan, 113 Okla. 194, 240 P. 699.

For the reasons above stated, we assume original jurisdiction to pass upon the question here involved.

The petitioner cites the following cases: Sparger v. Harris, 191 Okla. 583, 131 P. 2d 1011; 12 Am. Jur. 129, 147, 149, 186; 11 Am. Jur. 1046; Ragio v. State, 86 Tenn. 272, 6 S. W. 401; City of Tucson v. Stewart, 45 Ariz. 36,

40 P. 2d 72, 96 A. L. R. 1492; City of Chicago v. Netcher, 183 Ill. 104, 55 N. E. 707, 48 L. R. A. 261; Toliver v. Blizzard, 143 Ky. 773, 137 S. W. 509, 34 L. R. A., N. S., 890; In re Farb, 178 Cal. 592, 174 P. 320, 3 A. L. R. 301; United States v. Armstrong, D. C., 265 F. 683; State v. McKune, 215 Wis. 592, 255 N. W. 916; Korber v. City of Portland, 135 Or. 233, 295 P. 203; Adams v. Tanner, 244 U. S. 590, 37 S. Ct. 662, 61 L. Ed. 1336, L. R. A. 1917F, 1163, Ann. Cas. 1917D, 973; Shaw v. Fox, 246 Ky. 342, 55 S. W. 2d 11; State v. Johnsey, 46 Okla. Cr. 233, 287 P. 729; Grantham v. City of Chickasha, 156 Okla. 56, 9 P. 2d 747; State v. Childs, 32 Ariz. 222, 223, 257 P. 366, 54 A. L. R. 736.

Counsel for respondent presents the following authorities: Harris v. State, 74 Okla. Cr. 13, 122 P. 2d 401; State ex rel. Northern Pac. R. Co. v. Henneford, 3 Wash. 2d 48, 99 P. 2d 616; Ex parte Herrera (Cal. App.) 137 P. 2d 82; Ballentine v. Nester, 350 Mo. 58, 164 S. W. 2d 378; Savage v. Martin, 161 Or. 660, 91 P. 2d 273; United Cigar-Whelan Stores Corporation v. Delaware Liquor Comm., 2 Terry 74. 41 Del. 74, 15 A. 2d 442; Weinberg v. Kluchesky, 236 Wis. 99, 294 N. W. 530; State ex rel. Saperstein v. Bass, 177 Tenn. 609, 152 S. W. 2d 236; People v. Lewis, 319 Ill. 154, 149 N. E. 817; Manos v. City of Seattle, 146 Wash. 210, 262 P. 965; City of Spokane v. Coon, 3 Wash. 2d 243, 100 P. 2d 36; Thayer Amusement Corporation v. Moulton, 63 R. I. 182, 7 A. 2d 682, 124 A. L. R. 236; Bungalow Amusement Co. v. City of Seattle, 148 Wash. 485, 269 P. 1043, 60 A. L. R. 166; Ingram v. State, 193 Ga. 565, 19 S. E. 2d 493; Hinebaugh v. James, 119 W. Va. 162, 192 S. E. 177, 112 A. L. R. 59; Johnson v. Board of Com'rs of Reno County, 147 Kan. 211, 75 P. 2d 849; Pellicer v. Sweat, Sheriff, 131 Fla. 60, 179 So. 423.

Counsel in the amicus curiae brief cites these cases; Jacob Ruppert, Inc. v. Caffey, 251 U. S. 264, 40 S. Ct. 141,

64 L. Ed. 260; National Prohibition Cases (State of Rhode Island v. Palmer), 253 U. S. 350, 40 S. Ct. 486, 64 L. Ed. 946; Ex parte Townsend, 64 Tex. Cr. 350, 144 S. W. 628, Ann. Cas. 1914C, 814; Hinebaugh v. James, 119 W. Va. 162, 192 S. E. 177, 112 A. L. R. 59; State v. Loomis, 75 Mont. 88, 242 P. 344; Lindsley v. National Carbonic Gas Co., 220 U. S. 61, 76, 31 S. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160; Harris v. State, 74 Okla. Cr. 13, 122 P. 2d 401; Hayes v. United States, 10 Cir., 112 F. 2d 417; Miller v. Wilson, 236 U. S. 373, 35 S. Ct. 342, 59 L. Ed. 628, L. R. A. 1917F, 829; Radice v. People of State of New York, 264 U. S. 292, 44 S. Ct. 325, 68 L. Ed. 690; Dominion Hotel v. Arizona, 249 U. S. 265, 39 S. Ct. 273, 63 L. Ed. 597; Silver v. Silver, 280 U. S. 117, 50 S. Ct. 57, 74 L. Ed. 221, 65 A. L. R. 939; West Coast Hotel Co. v. Parrish, 300 U. S. 379, 57 S. Ct. 578, 81 L. Ed. 703, 108 A. L. R. 1330; Mt. Vernon-Woodberry Cotton Duck Co. v. Frankfort, etc., Co., 111 Md. 561, 75 A. 105, 134 Am. St. Rep. 636.

To a certain extent the propositions may be considered together. In petitioner's brief it is first contended that by reason of his having been granted a license to engage as dealer in nonintoxicating beverages as provided by Tit. 37 O. S. A. 1941 § 162e, which it is unnecessary to set out in detail but with the terms of which petitioner has complied, the state did not have the right to cancel said license during the time that it was in full force and effect by the act of the Legislature above quoted, and approved by the Governor on March 29, 1943.

In support of this contention, the case of Sparger v. Harris, supra, is cited. In that case, the Supreme Court had under consideration the validity of an ordinance of the city of Ardmore prohibiting the sale of 3.2 beer on Sunday. The city of Ardmore, by its answer, admitted

that 3.2 beer was a lawful commodity in Oklahoma. The court pointedly referred to this admission and stated that the admission by the city that 3.2 beer is a legal and lawful commodity necessarily includes an admission that the legislative classification constituted an appropriate exercise of legislative power, and, therefore, eliminated from the case the question as to the power of the Legislature to make such classification. The court did not hold that 3.2 beer was not intoxicating and should be classed along with coffee, tea, milk, or other common beverages, but the court did hold that, in view of the legislative act and the admission of defendants, that the city ordinance was invalid. Suffice it to say that in that case the court was dealing with the power of a city to enact an ordinance, while here we are dealing with an act of the Legislature itself. The act here involved is a subsequent legislative expression on the regulation of the sale of 3.2 beer.

In the case of Drew v. State, 71 Okla. Cr. 415, 112 P. 2d 429, this court held that the section of the statute, S. L. 1933, chap. 153, sec. 1 (37 O. S. 1941 § 151) which declared 3.2 beer nonintoxicating, was passed with reference to the question of taxation, and did not apply to the question of one being under the influence of liquor while driving an automobile, under Tit. 47 O. S. 1941 § 93. That the question of whether one was under the influence of intoxicating liquor was a question of fact to be determined by the jury, regardless of whether the accused had drunk 3.2 beer or a liquid containing a higher percentage of alcohol.

The courts are practically unanimous in holding that the state has the right to regulate places of business where 3.2 beer is sold, the same as to regulate places of business where intoxicating liquor is sold. The reason for this holding is that there is such a close relationship between the two that no real distinction, for the purpose of regula-

tion, can be made. Hinebaugh v. James, supra; Johnson v. Board of Com'rs of Reno County, supra; Pellicer v. Sweat, Sheriff, supra; People v. Lewis, supra.

It is quite uniformly held by the courts that where licenses have been granted for the sale of 3.2 beer or intoxicating liquor, the granting power has the absolute right to take away the license because they have the power to refuse to grant it in the first place; and no vested right exists by reason of having granted the license, and therefore it is not a violation of any constitutional right to take away or cancel the same. United Cigar-Whelan Stores Corp. v. Delaware Liquor Comm., supra; Crowley v. Christensen, 137 U. S. 86, 11 S. Ct. 13, 34 L. Ed. 620.

The main contention of petitioner is that the Act of the 1943 Legislature, above quoted, is unconstitutional, in that it violates section 1 of the Fourteenth Amendment to the Constitution of the United States, which is as follows:

". . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Petitioner relies particularly upon the "equal protection of the laws" clause above quoted, his contention being that under section 6 of the act a classification is attempted by the Legislature which by its terms denied to petitioner the same rights and privileges of those similarly situated, guaranteed to him by the Fourteenth Amendment. He says that the classification attempted is unreasonable and arbitrary.

The agreed facts, as presented by the record, are that at the time of the passage of the act in question, petitioner

was engaged in the business of selling 3.2 beer at a location designated as No. 18 West Grand avenue, Oklahoma City, Oklahoma; that he had been granted a license by the Oklahoma Tax Commission, which was issued on the 1st day of Juy, 1943, and which would expire on the 30th day of June, 1944; that he had paid therefor the sum of $100; that at the same address and in connection with his business he permitted and conducted public dancing on the same premises where he sold 3.2 beer for consumption on the premises; and that he had so conducted such place of business at the same location for a period of more than one year preceding the enactment of the statute complained of.

It was further stipulated and agreed that petitioner was not conducting any of the business exempted by the provisions of the act above quoted. It was agreed that petitioner was selling 3.2 beer and permitting dancing on the premises at the time of his arrest, and for this reason was being held in custody by the sheriff of Oklahoma county, Oklahoma.

It will be noted that by the provisions of section 6 of the act, the Legislature has exempted from the provisions thereof the following: "hotels legally licensed to sell such beverages on the 15th day of March, 1943, nor as they relate to dancing in private homes, or to private dances conducted for recreational purposes and not for profit by bona fide lodges, posts, clubs, fraternal, benevolent, or charitable organizations; nor shall the provisions of this act prevent the sale or licensing of the sale of such beverages in drug stores, cafes or restaurants selling food for consumption on the premises, in which drug stores, cafes or restaurants dancing is not conducted or permitted."

In the amicus curiae brief filed in this case attention is called to the fact that petitioner, not being one of the class mentioned in sections 2, 4, and 5 of the act, and not being within any of the exempted classes set forth in section 6, may not be permitted to question the validity of those sections. Authorities are cited which sustain this contention. 16 C. J. S., Constitutional Law, § 94, p. 207, note 41, and § 76 p. 157 notes 47 and 48.

There is considerable merit to this contention, but since petitioner is contending that if any part of section 6 is invalid the remainder of the act should fall, we assume original jurisdiction to determine its validity without dismissing the petition because of the technical proposition that it is not shown that petitioner was of the class who could attack the exemptions. We propose to determine the validity and constitutionality of said statute because of the public nature of the questions involved, the many businesses affected, and to prevent further delay in a determination of this issue. Many persons engaged in the sale of 3.2 beer and the State Tax Commission, among others, are entitled to have an expression by this court as to the validity of this act.

The "equal protection" clause has been before the courts of this country, both federal and state, since the very time of its adoption. Excerpts from decisions may be cited that tend to uphold different views, and this is true in the instant case. One can but read these authorities and apply the principles announced therein to the facts of the individual case, and come to that conclusion which is deemed to be right in the light of those facts. The construction, being of the Federal Constitution, the decisions of the Supreme Court of the United States are the highest and best authorities and should be given first consideration.

One of the leading cases from the Supreme Court is Lindsley v. National Carbonic Gas Co., supra. This case concerned the drilling of oil and gas wells. It announces the following fundamental principles [220 U. S. 61, 31 S. Ct. 340]:

"1. The equal-protection clause of the 14th Amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary. Bachtel v. Wilson, 204 U. S. 36, 41, 27 S. Ct. 243, 51 L. Ed. 357, 359; Louisville & N. R. Co. v. Melton, 218 U. S. 36, 30 S. Ct. 676, 54 L. Ed. 921 [47 L. R. A., N. S., 84]; Ozan Lumber Co. v. Union County Nat. Bank, 207 U. S. 251, 256, 28 S. Ct. 89, 52 L. Ed. 195, 197; Munn v. Illinois, 94 U. S. 113, 132, 24 L. Ed. 77, 86; Henderson Bridge Co. v. Henderson, 173 U. S. 592, 615, 19 S. Ct. 553, 43 L. Ed. 823, 831.

The court applies the rules above announced to the facts in that case. They are applicable in many respects to the case here.

Many of the cases above cited fully discuss and adhere to these principles.

In the case of Hayes v. United States, supra, the Tenth Circuit Court of Appeals, in passing upon the Oklahoma alcohol-permit law, which had been assailed as illegal classification, said [112 F. 2d 418]:

"If any state of facts reasonably can be conceived that would sustain a legislative classification, a presumption exists that the state of facts exists, and one who assails the classification must show that the action is arbitrary. U. S. C. A. Const. Amend. 14.

"Parties who attacked constitutionality of Oklahoma statute relating to importation of intoxicating liquor failed to sustain burden of proving unreasonableness of legislative classification which resulted in more severe penalty for importing liquor than for transporting liquor within the state. 37 Okla. St. Ann. §§ 1, 46; U. S. C. A. Const. Amend. 14."

This case was cited with approval by this court in the case of Harris v. State, supra, on the proposition there involved.

In the case of Miller v. Wilson, supra, the court had under consideration the arrest of the proprietor of a hotel, upon the charge of employing and requiring a woman to work in the hotel for the period of nine hours a day, contrary to the statute of California, which forbade such employment for more than eight hours a day, or 48 hours a week. Habeas corpus was filed in the Supreme Court of California, urging that the act was repugnant to the 14th Amendment to the Constitution of the United States as being unreasonable and discriminatory. In re Miller, 162 Cal. 687, 124 P. 427. The state court characterized the statute as one "intended for a police regulation to preserve, protect or promote the general health and welfare" and this view was upheld by the Supreme Court of the United States. That court said, in part [236 U. S. 373, 35 S. Ct. 344]:

"The Legislature is not debarred from classifying according to general considerations and with regard to prevailing conditions; otherwise, there could be no legislative power to classify. For it is always possible by

analysis to discover inequalities as to some persons or things embraced within any specified class. A classification based simply on a general description of work would almost certainly bring within the class a host of individual instances exhibiting very wide differences; it is impossible to deny to the Legislature the authority to take account of these differences, and to do this according to practical groupings in which, while certain individual distinctions may still exist, the group selected will, as a whole, fairly present a class in itself. Frequently such groupings may be made with respect to the general nature of the business in which the work is performed; and, where a distinction based on the nature of the business is not an unreasonable one, considered in its general application, the classification is not to be condemned. See Louisville & N. R. Co. v. Melton, 218 U. S. 36, 53, 54, 30 S. Ct. 676, 54 L. Ed. 921, 928, 929, 47 L. R. A., N. S., 84. Hotels as a class are distinct establishments not only in their relative size, but in the fact that they maintain a special organization to supply a distinct service. They are adapted to the needs of strangers and travelers who are served indiscriminately. As the state court pointed out, the women employees in hotels are, for the most part, chambermaids and waitresses; and it cannot be said that the conditions of work are identical with those which obtain in establishments of a different character, or that it was beyond the legislative power to recognize the differences that exist.

"If the conclusion be reached, as we think it must be, that the Legislature could properly include hotels in its classification, the question whether the act must be deemed to be invalid because of its omission of women employed in certain other lines of business is substantially the same as that presented in Hawley v. Walker, [232 U. S. 718, 34 S. Ct. 479, 58 L. Ed. 813], supra. There, the statute excepted 'canneries or establishments engaged in preparing for use perishable goods;' and it was asked in that case, on behalf of the owner of a millinery establishment, why the act should omit mercantile establishments and hotels. The contention as to the various omissions which are noted in the objections here urged ignores the well-

established principle that the Legislature is not bound, in order to support the constitutional validity of its regulation, to extend it to all cases which it might possibly reach.

"Dealing with practical exigencies, the Legislature may be guided by experience. Patsone v. Pennsylvania, 232 U. S. 138, 144, 34 S. Ct. 281, 58 L. Ed. 539, 543. It is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest. As has been said, it may 'proceed cautiously, step by step,' and 'if an evil is especially experienced in a particular branch of business' it is not necessary that the prohibition 'should be couched in all-embracing terms.' Carroll v. Greenwich Ins. Co., 199 U. S. 401, 411, 26 S. Ct. 66, 50 L. Ed. 246, 250. If the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied. Keokee Consol. Coke Co. v. Taylor, 234 U. S. 224, 227, 34 S. Ct. 856, 58 L. Ed. 1288, 1289. Upon this principle, which has had abundant illustration in the decisions cited below it cannot be concluded that the failure to extend the act to other and distinct lines of business, having their own circumstances and conditions, or to domestic service, created an arbitrary discrimination as against the proprietors of hotels."

See, also, Radice v. New York, supra.

In the case of Dominion Hotel v. Arizona, supra [249 U. S. 265, 39 S. Ct. 274], Justice Holmes in delivering the opinion of the court, said:

"The Fourteenth Amendment is not a pedagogical requirement of the impracticable. The equal protection of the laws does not mean that all occupations that are called by the same name must be treated in the same way. The power of the State 'may be determined by degrees of evil or exercised in cases where detriment is specially experienced.' Armour & Co. v. North Dakota, 240 U. S. 510, 517, 36 S. Ct. 440, 60 L. Ed 771 [776], Ann. Cas. 1916D, 548. It may do what it can to prevent what is

deemed an evil and stop short of those cases in which the harm to the few concerned is thought less important than the harm to the public that would ensue if the rule laid down were made mathematically exact. The only question is whether we can say on our judicial knowledge that the Legislature of Arizona could not have had any reasonable ground for believing that there were such public considerations for the distinction made by the present law. The deference due to the judgment of the Legislature on the matter has been emphasized again and again. Hebe Co. v. Shaw, 248 U. S. 297, 303, 39 S. Ct. 125, 63 L. Ed. 255. Of course, this is especially true when local conditions may affect the answers, conditions that the legislation does, but that we cannot know. Thomas Cusack Co. v. Chicago, 242 U. S. 526, 530, 531, 37 S. Ct. 190, 61 L. Ed. 472 [475, 476], L. R. A. 1918A, 136, Ann. Cas. 1917C, 594.

"Presumably, or at least possibly, the main custom of restaurants upon railroad rights of way comes from the passengers upon trains that stop to allow them to eat. The work must be adjusted to the hours of the trains. This fact makes a practical and, it may be, an important distinction between such restaurants and others. If in its theory the distinction is justifiable, as for all we know, it is, the fact that some cases, including the plaintiff's, are very near to the line, makes it none the worse. That is the inevitable result of drawing a line where the distinctions are distinctions of degree; and the constant business of the law is to draw such lines. 'Upholding the Act as embodying a principle generally fair and doing as nearly equal justice as can be expected seems to import that if a particular case of hardship arises under it in its natural and ordinary application, that hardship must be borne as one of the imperfections of human things.' Louisville & N. R. Co. v. Barber Asphalt Paving Co., 197 U. S. 430, 434, 25 S. Ct. 466, 467, 49 L. Ed. 819 [821]. We cannot pronounce the statute void."

See Silver v. Silver, 280 U S. 117, 50 S. Ct. 57, 74 L. Ed. 221, 65 A. L. R. 939.

In West Coast Hotel Co. v. Parrish, supra [300 U. S. 379, 57 S. Ct. 585], the Court said:

"The argument that the legislation in question constitutes an arbitrary discrimination because it does not extend to men, is unavailing. This court has frequently held that the legislative authority, acting within its proper field, is not bound to extend its regulation to all cases which it might possibly reach. The Legislature 'is free to recognize degrees of harm and it may confine its restrictions to those classes of cases where the need is deemed to be clearest.' If 'the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied.' There is no 'doctrinaire requirement' that the legislation should be couched in all embracing terms."

Many state courts are in accord with the decisions of the Supreme Court of the United States. In the case of Mt. Vernon-Woodberry, etc., Co. v. Frankfort, etc., Co., supra [111 Md. 561, 75 A. 709], the Supreme Court of Maryland said:

"In Cooley's Constitutional Lim. (6th Ed.) p. 216, it is said: 'The question whether a law be void for its repugnancy to the constitution is at all times a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in doubtful cases.' And again, on page 220, that the courts 'must assume that legislative discretion has been properly exercised. If evidence was required, it must be supposed that it was before the Legislature when the act was passed.' In Ex parte Spencer, 149 Cal. 396, 86 P. 896, 117 Am. St. Rep. 137 [9 Ann. Cas. 1105], it was said that: 'The presumption always is that an act of the Legislature is constitutional and when this depends on the existence, or nonexistence, of some fact, or state of facts, the determination thereof is primarily for the Legislature and the courts will acquiesce in its decision, unless the error clearly appears.' "

State ex rel. v. Hanneford, supra; Ex parte Herrera, supra; Ballentine v. Nester, supra; Savage v. Martin, supra; United Cigar-Whelan Stores Corporation v. Delaware Liquor Commission, supra.

In the case last above cited, the Supreme Court of Delaware said [2 Terry 74, 41 Del. 74, 15 A. 2d 445]:

"As to the second question, it is contended that the Legislature of this state, in the act in question, has adopted an arbitrary and unreasonable classification of persons prohibited from the sale or dispensing of alcoholic liquors, and that thus this appellant is deprived of those equal rights enjoyed by persons in other occupations.

"Now the control and supervision of the traffic in alcoholic or intoxicating liquors comes peculiarly and particularly within the general police powers of a state, and the Legislature has plenary power to require occupational licenses before anyone is qualified to deal in such liquor. When the Legislature indulges in a classification of persons in connection with any occupational license, such legislative classification is entitled to a very high measure of judicial support. The classification must be clearly arbitrary and capricious before a court can interfere with a legislative judgment. If any state of facts can reasonably be conceived as sustaining the classification, the existence of such facts must be assumed as the basis of the legislative action. When the legislative classification is clearly arbitrary and capricious and based on no tangible or substantial distinction, then, but not until then, can the courts interfere.

"There are familiar principles of construction to be found in every treatise on constitutional law. They apply with accentuated force in connection with licenses or permits for the sale of alcoholic liquor. As the license, when granted, does not constitute a vested and irrevocable right to sell liquor (Law & Order Society v. Pierce, 6 Boyce 589, 29 Del. 589, 102 A. 62) so, too, there exists no vested right to obtain the license which may not be reasonably circumscribed by the Legislature in the exercise of the general

police power. The right to sell liquor is not an inalienable right guarded by the Constitution, nor one of the privileges and immunities of citizens of the United States. Crowley. v. Christensen, 137 U. S. 86, 91, 11 S. Ct. 13, 34 L. Ed. 620.

"As the Legislature has the power to deny to all individuals in this state the right to sell alcoholic liquor and to control the traffic through state-owned stores, so it has the right to limit sales of liquor in such reasonable manner as the public welfare requires. In the absence of clearly arbitrary or capricious classification we cannot say that the designation by the Legislature of certain places where the sale of intoxicating liquor is deemed prejudicial to the public welfare and therefore prohibited, is not a reasonable control of the traffic in liquor based upon legislative experience, or the exercise of legislative judgment. We are here solely concerned with the question as to whether the Legislature may not say that alcoholic liquor shall not be sold in a cigar store. We, of course, do not know the reasons which prompted the legislative action. If the Legislature thought of a modern cigar store as a place often patronized by youth or adolescents, where considerable groups are, at times, accustomed to congregate, and that the display thereof a stock of liquor would not be conducive to the public good but, on the contrary, that liquor should not there be sold, it is difficult for the court to say that the legislative judgment shall not be effective. The judgment of the court may not be substituted for that of the Legislature, and it is quite immaterial that the act in question may not seem most likely to accomplish the desired end, and it is equally immaterial that the wisdom of the legislation may be open to question."

In Weinberg v. Kluchesky, supra [236 Wis. 99, 294 N. W. 531], the Supreme Court of Wisconsin said:

"In passing upon these contentions there are applicable and well established principles that the Legislature in the exercise of the police power may entirely prohibit traffic in intoxicating liquors for use as a beverage, or may license such traffic conditionally by imposing such restraints or conditions upon licensees as it considers nec-

essary and reasonable in its judgment and discretion; even though the conditions coupled with the license may be so burdensome that the business cannot be conducted successfully thereunder. State ex rel. Henshall v. Ludington, 33 Wis. 107; Zodrow v. State, 154 Wis. 551, 143 N. W. 693; General Sales & Liquor Co. v. Becker, D. C., 14 F. Supp. 348; Primier-Pabst Sales Co. v. McNutt, Governor, D. C., 17 F. Supp. 708; 16 C. J. S., Constitutional Law, 512, p. 1027. As we said in Vieau v. Common Council, 235 Wis. 122, 124, 125, 292 N. W. 297, 298:

" 'The regulation of the sale of intoxicating liquors does not come within the equality provisions of the United States Constitution. As was stated in Giozza v. Tiernan, 148 U. S. 657, 661, 13 S. Ct. 721, 723, 37 L. Ed. 599: "The privileges and immunities of citizens of the United States are privileges and immunities arising out of the nature and essential character of the national government, and granted or secured by the Constitution of the United States, and the right to sell intoxicating liquors is not one of the rights growing out of such citizenship." See also Bartemeyer v. Iowa, 85 U. S. 129, 18 Wall. 129, 21 L. Ed. 929. . . . statutes regulating the sale of intoxicating liquor may prescribe requirements which result in classification as between citizens . . . As was said in Mehlos v. Milwaukee, 156 Wis. 591, 604, 146 N. W. 882, 886, 51 L. R. A., N. S., 1009, Ann. Cas. 1915C, 1102: "There is no federal guaranty which exempts citizens of the United States from reasonable police regulations as regards persons and property. State ex rel. Kellogg v. Currens, 111 Wis. 431, 87 N. W. 561, 56 L. R. A. 252, or which prevents legitimate classification for the purpose of police regulation. In case of such classification and the regulation affecting all members of the class alike, there is no violation of any equality clause of national or State Constitution." ' "

And in the case of State ex rel. v. Bass, supra, the Supreme Court of Tennessee said:

"There is no inherent right in a citizen to sell intoxicating liquors by retail in a municipality, and, since the business of selling liquor by retail is attended with danger

to community, such business may be entirely prohibited or be permitted under such conditions as will limit to the utmost its evils; the manner and extent of regulation resting in discretion of municipality's governing authority. . .

"One who assails a classification made in a police measure, such as an ordinance regulating retailers of liquor, must carry burden of showing that such classification is essentially arbitrary."

In People v. Lewis, supra [319 Ill. 154, 149 N. E. 820], the Supreme Court of Illinois said:

"It is contended by plaintiffs in error that the bottle designated as Exhibit 2, and called 'stomach bitters,' contained patented or proprietary medicine. The people evidently so regarded it, as their instruction No. 8 stated that it is unlawful to keep for sale or to possess in a soft drink parlor any patented or proprietary medicine, whether fit or unfit for beverage use, which contains more than one-half of one per cent. of alcohol by volume. Plaintiffs in error insist that sections 4 and 5 of the act are discriminatory, and amount to class legislation, and are void because the statute permits bona fide drug stores, bona fide general stores, and bona fide grocery stores only to sell such patent or patented medicines, and prohibits proprietors of soft drink parlors and other proprietors mentioned in section 5 from selling such patent or patented articles under any circumstances if they contain one-half or more per cent. of alcohol. It is a well-known fact that keepers of soft drink parlors, restaurants, and some of the other proprietors mentioned in section 5 often resort to the sale of intoxicating liquors under the cloak of their business, and Congress and the Legislature have the undoubted constitutional power to prohibit such proprietors from selling intoxicating liquors under any and all conditions and at the same time permit bona fide drug stores and other such stores to sell the same under proper regulations, or even without any regulations, if there is any substantial reason existing for the theory that such stores are not generally found among those whose proprietors

resort to the illegal sale of intoxicating liquors under the cloak of their business. The Legislature, having such power, also has the further right and power to judge for itself as to all establishments that should be designated in the prohibited class as not privileged to sell such patent or patented medicines. There are reasonable and substantial grounds for making such classification, and such classification and regulation are reasonably necessary to enforce the provisions of the Eighteenth Amendment."

The case of Manos v. City of Seattle, supra, was a case very similar to the case at bar. It was there said by the Supreme Court of Washington [146 Wash. 210, 262 P. 966]:

"The claim that the ordinances are violative of constitutional prohibitions is founded on the contention that they are discriminatory. They permit, it will be observed, the continued operation of such dance halls as are lawfully conducted at the time the ordinances go into effect, and permit dances to be conducted within the prohibited areas when conducted under the jurisdiction and control of certain named boards. But it is not our opinion that either of these exceptions renders the ordinances invalid. The first was obviously intended as a relief for those actually engaged in the business the ordinances prohibit. They had investments therein made when the business was lawful and to cut them off arbitrarily could result in serious monetary losses. It must be remembered, furthermore, that the ordinances do not permit the perpetual existence of dance halls within the prescribed area. In time, more or less prolonged, all will be eliminated. It seems clear, therefore, that those actually engaged in the forbidden businesses stand on a different plane than do those who desire to commence the business anew. The parties are not in the same situation. There is thus a distinction as to class, and, where there is such a distinction, the lawmaking body may classify, and may grant privileges to one class which it denies to another. It is needless to collect the cases on the general principle involved. The principle is uniformly recognized, although

it may be hard in some instances to recognize a difference between the cases where it is held that the facts do and do not warrant an application of the principle. As a case bearing upon the direct question, see Laurelle v. Bush, 17 Cal. App. 409, 119 P. 953.

"As to the second of the objections, it is at once apparent that there is a wide distinction also between dances conducted in a public dance hall, where the sole qualification for admittance is the payment of an admittance fee, and a dance conducted under the supervision of a board, where persons of an objectionable character can be excluded. The objection is not to dancing in and of itself. Dancing conducted in private homes, and in more public places, when properly supervised, is an innocent and wholesome recreation and amusement, but public dance halls, especially in populous cities, have long been recognized as an influence detrimental to the public welfare. They are the favorite resorts of the vicious and immoral, and are the favored working places of that most vile of all humanity, the procurer. There being such a distinction, it was within the power of the city council to classify them and allow privileges to the one which it denied to the other. A case in point is State v. Loomis, 75 Mont. 88, 242 P. 344. There the statute prohibited the keeping open of any dance hall on the first day of the week, excepting, however, from its operation dance halls conducted in public parks. Holding that the exception made did not render the ordinance void, the court said:

" 'It is contended, further, that by the proviso found in the amended act an arbitrary distinction is drawn between subjects of the same class, in this: That a dancing hall or pavilion in a public park or playground is permitted to open and operate on Sunday, whereas a dance house or dance hall located outside of a public park or playground is required to close on that day. If it be assumed that a dancing hall or pavilion in a public park or playground of necessity belongs to the same class as a dance house or dance hall located outside of a public park or playground, defendant might be in a position to complain. On the other hand, if we assume the existence of

two distinct classes, defendant cannot insist that the same regulations must apply to each. . . . The right of the state to regulate dance houses or dance halls cannot be questioned. (Freund on Police Power, § 250), and, for the same reasons which justified the legislation above, the state may prescribe the territorial limits within which dance houses or dance halls may be opened on Sunday. The amended act does not discriminate between subjects of the same class, but does create two distinct classes, based upon location (Bacon v. Walker, 204 U. S. 311, 27 S. Ct. 289, 51 L. Ed. 499), and it is not inconceivable that the Legislature had before it ample evidence to justify the distinction made. * * * ' "

See, also, City of Spokane v. Coon, supra, and Thayer Amusement Corporation v. Moulton, supra.

In Bungalow Amusement Co. v. City of Seattle, supra, the Supreme Court of Washington said:

"Certain businesses and vocations, because of their potential evil consequences, are subject to regulation by the exercise of the police power to the extent even of entirely prohibiting them.

"Public dance halls may be entirely suppressed and prohibited by the exercise of the police power without infringing any constitutional right, and are, therefore, subject to any and all regulations which the body lawfully exercising that power may impose."

In Hinebaugh v. James, supra [119 W. Va. 162, 192 S. E. 178], the West Virginia Court in the body of the opinion said:

"Notwithstanding the Legislature has declared that beer containing not in excess of five per centum alcohol is non-intoxicating, it by no means follows that the Legislature is thereby precluded from setting up strict regulations for the manufacture, distribution and retail of that commodity. Though beer be considered non-intoxicating, nevertheless, the generally known acts pertaining to the manner in which it is often dispensed and of the evils which

not infrequently attend thereunto, we entertain no doubt that the Legislature may set up such system of beer regulation as it may deem proper, within the Constitution. And such regulation may apply to distribution as well as to manufacturing and retailing. The situation is so closely analogous to the traffic in hard liquor, as to the regulation whereof under the police power there can be no doubt, that the propriety of strictly circumscribing the beer business seems obviously proper. Such a matter is essentially for legislative determination. The Legislature, and not the courts, must determine the policy of the state to be voiced in statutory enactments."

This case has reference to beer, defined as nonintoxicating, and to the regulation of its sale. See, also, Johnson v. Board of County Commissioners, Kan., supra, and Pellicer v. Sweat, Sheriff, Fla., supra.

In 12 Am. Jur. pp. 129 to 169, is found a full discussion of the general rules applying to the application of the "equal protection clause" of the Constitution of the United States. See, also, 11 Am. Jur. p. 1046 et seq.

Applying the rules as announced in the above decisions, it is at once discernible that petitioner has not "carried the burden" necessary to establish that there was no difference between public dances carried on in the places such as he conducted, and as are generally carried on in "hotels," "in private homes," or "private dances conducted for recreational purposes by bona fide lodges, posts, clubs, fraternal, benevolent or charitable organizations." Under the law as above announced the presumption is that the Legislature conducted an examination into the facts and may have found that there was a vast difference in the conduct of a public dance hall and one conducted by the places exempted as above stated. From some of the opinions it is obvious that there is a difference in dances given in private homes, and public places. It is also noted

that the exemption covers certain places where dances are conducted "for recreation and not for profit."

63 O. S. 1941 § 331 defines "hotel" and prescribes for its licensing by the State Board of Health. Said statute reads:

"Every building or other structure, kept, used, maintained, advertised or held out to the public to be a place where food is served and sleeping accommodations are offered for pay to transient guests, in which eight or more rooms are used for the accommodation for such transient guests and having one or more dining rooms or cafes, where meals or lunches are served to such transient guests, such sleeping accommodations and dining rooms being conducted in the same building and under the same management, together with any buildings in connection therewith shall, for the purposes of this act, be deemed a hotel, such only shall have the right to the use of the name 'hotel' in connection with their business, and upon the proper application the State Board of Health shall issue to such above described business a license to conduct a hotel. Laws 1915, ch. 227, § 1."

The legislators, when they exempted "licensed hotels," evidently were familiar with this statute. They further knew that "licensed hotels" are permanent places of business which have a reputation to maintain, which must conform to regulations prescribed by the State Board of Health, and which are primarily engaged in providing lodging and meals for transient guests. It may be that in their investigation to determine a basis for classification that they found that there were not over four or five licensed hotels in the State of Oklahoma, where the sale of 3.2 beer and dancing are permitted, and that, often, at these licensed hotels, where such is permitted, that the dances are given by the hotels or at the hotels for the benefit of their guests and friends. The sale of beer and

dancing are merely incidental to the principal business of providing food and lodging. From these considerations and others which were probably called to the attention of the Legislature, they may have come to the conclusion that hotel managers would be more careful in supervising and maintaining dances in their establishments than would the owners of places such as that operated by petitioner. It appears from the record that petitioner's sole business was that of conducting a public place for the sale of 3.2 beer, soft drinks, and dancing. Under such a state of the record, while this court might doubt the wisdom of the classification made by the Legislature, we do not have the authority to say under such facts that it was without power to make such determination.

As stated in one of the briefs filed in this case:

"Furthermore, the Legislature may have taken cognizance of the fact that dancing is a recreation of young people in the main, including minors, both boys and girls. That they may constitute at least a substantial part of the patronage of places where dancing is permitted or conducted. The Legislature has from the first prohibited the sale of the described beverage to minors for consumption on the premises. It is conceivable that it would be more difficult to enforce this regulation and easier to evade it elsewhere, than under the different conditions which the Legislature conceivably may have found to exist in dancing as usually conducted in the excepted places."

We have carefully read every case cited by petitioner, including the case of Grantham v. City of Chickasha, supra. All of these cases when read as a whole announce practically the same general rules of statutory construction. None of the cited cases have a factual situation similar to the case here involved.

It is no answer to the right of the Legislature to make proper classifications for the reasons stated in the opinions

heretofore cited, that because individual places operating under guise of a hotel may be conducted in a disorderly or unlawful manner would cause an arbitrary and unreasonable classification. This argument might be made against any of the places coming within the exception, the same as against hotels.

This court is not presently concerned with the manner of the enforcement of this statute, but only with the question of the right of the Legislature to make the classification, and whether it is unreasonable and arbitrary. Legislative power, not policy, is the concern of the courts.

So far as the evading of the law by the operation of hotels for the purpose of permitting public dance halls and the sale of beer in connection therewith, it is to be presumed that the proper officers would not permit a violation of this statute by a mere subterfuge. There is little merit to this argument, because only "licensed hotels" are exempt and, as hereinabove pointed out, before a business can secure a license it must conform to the statute and be under the supervision of the State Board of Health. Under such circumstances, the opportunity for evasion under the guise of a "licensed hotel" is negligible.

The cases above cited clearly reveal that where classification is attempted by the Legislature, there may be instances of inconveniences and hardships, and even unequal rights as between different parties, but as stated by Justice Holmes in the case of Dominion Hotel v. Arizona, supra [249 U. S. 265, 39 S. Ct. 274]:

"That is the inevitable result of drawing a line where the distinctions are distinctions of degree; and the constant business of the law is to draw such lines. 'Upholding the act as embodying a principle generally fair and doing as nearly equal justice as can be expected seems to import

that if a particular case of hardship arises under it in its natural and ordinary application, that hardship must be borne as one of the imperfections of human things.' "

This court and the Supreme Court of this state have often recognized the right of the Legislature to classify and create classes, so long as those classifications are not arbitrary and unreasonable. Walcher v. First Presbyterian Church, 76 Okla. 9, 184 P. 106, 6 A. L. R. 1593; Kreps v. Brady, 37 Okla. 754, 133 P. 216, 47 L. R. A., N. S., 106; Herrin et al. v. Arnold, 183 Okla. 392, 82 P. 2d 977, 119 A. L. R. 1471; Skinner v. State, 189 Okla. 235, 115 P. 2d 123; Beveridge v. Harper & Turner Oil Trust, 168 Okla. 609, 35 P. 2d 435; Hover v. Oklahoma City, 133 Okla. 71, 271 P. 162; Insurance Co. of North America v. Welch, 49 Okla. 620, 154 P. 48, Ann. Cas. 1918E, 471; Ex parte Tindall, 102 Okla. 192, 229 P. 125; Wilson & Co. v. Hickey, 186 Okla. 324, 97 P. 2d 564; Ex parte Herrin, 67 Okla. Cr. 104, 93 P. 2d 21; Harris v. State, 74 Okla. Cr. 13, 122 P. 2d 401; Couch v. State, 71 Okla. Cr. 223, 110 P. 2d 613; Ex parte Davis, 66 Okla. Cr. 271, 91 P. 2d 799; Shaw v. State, 76 Okla. Cr. 271, 134 P. 2d 999, 138 P. 2d 136; Hayes v. United States, 10 Cir., 112 F. 2d 417.

In the case of Couch v. State, 71 Okla. Cr. 223, 110 P. 2d 613, the authority of the Legislature to pass acts for the protection of society under the police power is clearly stated. It is therein held:

"The 'police power' is an inherent attribute of state sovereignty, under which the state, within constitutional limitations, may determine what is dangerous and injurious to public order, safety, health, morals and general welfare of society."

Whenever the operation of dance halls in connection with hotels is deemed detrimental to the public good, the Legislature of this state has the power to correct the evil.

This is a question for the Legislature and not the courts. It is not for this court to strike down the act simply because the Legislature did not see fit to make the act all-inclusive. For, as the Supreme Court of the United States has well said in the case of Miller v. Wilson, supra [236 U. S. 373, 35 S. Ct. 344]:

"The Legislature is not bound, in order to support the constitutional validity of its regulation, to extend it to all cases which it might possibly reach. * * * It is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest."

As to that part of section 6 which attempts to fix an arbitrary date, namely, the 15th day of March, 1943, as being the date for determining whether a licensed hotel comes within the exemption, we are of the opinion that the phrase "on the 15th day of March, 1943," is clearly arbitrary and discriminatory as between hotels in operation before and after that date. Similar provisions have been invalidated by many courts. State ex rel. First Presbyterian Church v. Fuller, 136 Fla. 788, 187 So. 148; Town of Mandeville v. Band, 111 La. 806, 35 So. 915; Juneau v. Badger Co-Op. Oil Co., 227 Wis. 620, 279 N. W. 666; Tugman v. Chicago, 78 Ill. 405; County of Los Angeles v. Hollywood Cemetery Ass'n, 124 Cal. 344, 57 P. 153, 71 Am. St. Rep. 75; Manos v. Seattle, supra.

In some jurisdictions statutes have been sustained as nondiscriminatory which exempted businesses in operation on effective date of act, but we know of no decision which would authorize a Legislature to go back to any date without any reasonable basis for its selection and say that all businesses in operation on that date were exempt from the act, but that those who engaged in business the next day or any date subsequent would come within the

prohibition of the statute. We do not think that the Legislature had the right to set this arbitrary date. Nor do we believe that by holding this part of the act unconstitutional, the legality of any other portion of the act is affected. This for the reason that it is expressly recited in the saving clause of the act, "If any section, sentence, clause or phrase of this Act is for any reason held to be invalid, such decision shall not affect the validity of the remaining portions of this Act." It will be noted that this clause says, "any section, sentence, clause or phrase." Hence we hold that the phrase, "on the 15th day of March, 1943," is clearly arbitrary, unconstitutional and void, and should be and is hereby stricken and deleted from section 6 of the act, and that with this deletion, the act is constitutional and valid.

Even though petitioner does not operate a "licensed hotel" and, therefore, cannot complain of this arbitrary date, we proceed to make a determination as to the effect of the deletion of this phrase because of the insistence of the petitioner that the phrase is purely arbitrary and if it were stricken, that all hotels would be permitted to sell beer and conduct dances, and that, when this privilege is extended to all hotels, there would be illegal discrimination as between petitioner and such hotels.

We agree with petitioner's contention that the insertion of the phrase "on the 15th day of March, 1943," is discriminatory and void, but do not, as heretofore pointed out, agree with his conclusion that the extending of the exemption to all "licensed hotels" creates an unlawful classification.

Reading the act as a whole, and especially section 6, with the above deletion, there can be no doubt that it was the clear intention of the Legislature to exempt legally

licensed hotels from the terms of the act, the same as it was to exempt "dancing in private homes or to private dances conducted for recreational purposes and not for profit by bona fide lodges, posts, clubs, fraternal, benevolent or charitable organizations." The question of the regulation or elimination of any of those within the exempted class, is as above stated, a question for the Legislature, and not for the courts.

For the reasons above stated, the petition for habeas corpus is denied and petitioner is remanded to the custody of the sheriff of Oklahoma county.