CHARLES C. KEEDY, Receiver of Sterling Electric Company,

*vs.*

STERLING ELECTRIC APPLIANCE COMPANY, a corporation of the State of Delaware.

*New Castle, Oct.* 31, 1921.

The transfer of the assets of an insolvent corporation to newly created corporation organized by the officers of the insolvent corporation, without compliance with Bulk Sales Act, *Par.* 2638 *Revised Code* 1915, (§18) as amended by Act General Assembly April 17, 1917 (29 *Del. Laws, c.* 222), *held* void as to creditors of the insolvent corporation.

Where the language of a statute is susceptible of two constructions, and there is no implication to be found in the language of the act as to which of the two constructions should govern, resort may be had to the general purpose the Legislature had in mind, the sort of evil it was trying to meet, and the adequacy of the act as construed to remedy such evil.

In action involving the construction of the Bulk Sales Act, the fact that merchants operate to a large extent on credit, and that those who might be so disposed may easily acquire a stock of goods largely on credit, and later dispose thereof for cash, and fail to pay creditor who supplied the goods, *held* a matter of common knowledge.

The presumption of fraud under Bulk Sales Act, *Par.* 2638 *Revised Code* 1915, (§18) as amended by Act General Assembly April 17, 1917 (29 *Del. Laws, c.* 222), providing that a sale made in violation thereof is "presumed" to be fraudulent and void, *held* a conclusive and not a rebuttable presumption, in view of the purpose of the statute and the provision of act subjecting purchaser to punishment for failure to comply with act.

Quere. In absence of a "Bulk Sales Act", is not a sale of goods in bulk out of ordinary way of business, or in an unusual manner, presumptive evidence of fraud?

Where officers of insolvent corporation organized a new corporation and transferred to the new corporation a substantial portion of the assets of insolvent corporation in return for stock in the new corporation, and where the only assets of the new corporation consisted of property it acquired by the transfer, the transfer was fraudulent and void as to creditors of the insolvent corporation regardless of the Bulk Sales Act.

A receiver of a corporation appointed under *Par.* 3883, *Revised Code* 1915, becomes a *quasi assignee* of the corporation, and represents, not only the corportation of which he is receiver, but the interests of all creditors of the corporation as well, and may sue to set aside corporate transfers and conveyances made in fraud of the creditors.

BILL TO SET ASIDE A TRANSFER OF PERSONAL PROPERTY. The complainant, as receiver of Sterling Electric Company, filed this bill against Sterling Electric Appliance Company praying that the sale and transfer by the Electric Company to the Appliance Company of certain property and assets be decreed to be fraudulent, and that said property and assets be decreed to be the property and estate of the Electric Company in the hands of the complainant, its receiver, for the benefit of its creditors and stockholders.

The cause was heard on bill, answer and testimony of witnesses heard orally before the Chancellor. The facts, about which there is very little dispute, are as follows:

The Sterling Electric Company was organized for the purpose of doing a business of dealing in electric washing machines, electric fixtures and appliances of various kinds. Its business did not prosper, and by November, 1920, it was in an insolvent condition. Its officers, upon the advice of one of its principal directors, thereupon organized a new corporation, the defendant, herein called the Appliance Company, for the purpose of taking over a considerable portion of its assets. The officers of the Electric Company became the officers also of the Appliance Company. Both corporations were, therefore, controlled by the same individuals. The Electric Company while insolvent transferred certain merchandise, equipment, etc., valued at $3,825.00 to the Appliance Company and also certain so-called lease contracts evidencing sales of electric washing machines, the face value of which leases was $6,775.61. In return for this transfer and as consideration therefor, the Appliance Company issued to the Electric Company one hundred and fifty-three shares of its capital stock of the par value of $3,825.00, and agreed to assume the Electric Company's liabilities in connection with the leases in the sum of $3,347.55, as well as an obligation to supply labor and materials in keeping the electric machines in repair. The liabilities and obligations to repair, however, continued as against the Electric Company.

The bill charges, and the answer admits, that at the time of this transfer the Electric Company was insolvent, its liabilities greatly exceeding its assets, including this property, and that both companies, through their respective officers, had actual or con-

structive knowledge of these facts. At the time of the transfer the Electric Company's balance sheet showed assets of $20,910.54 and liabilities of $59,429.31.

A short time after the organization of the Appliance Company, its officers issued two hundred and forty shares of its capital stock ($6,000.00 par) to themselves, the company receiving therefor the individual notes of the officers for the par value of their respective shares. No money has ever been paid on account of these notes, the officers crediting them with weekly allotments from salaries. The amounts so credited on the notes aggregate nine hundred and sixty dollars. The business of the Appliance Company has been conducted at the same location as that conducted by the Electric Company prior to the transfer by it of its assets to the Appliance Company.

Under this state of facts the complainant charges that the transfer of the assets by the Electric Company to the Appliance Company was in fraud of the creditors of the Electric Company and, therefore, void.

It is further charged that the alleged sale and transfer was fraudulent and void as against creditors because there was no attempt to comply with the so-called "Bulk Sales Act" of this state, approved April 17, 1917, being *Chapter* 222 *of Volume* 29 *Laws of Delaware.*

*George N. Davis*, for the complainant.

*Edmund S. Hellings*, for the defendant.

THE CHANCELLOR. The original "Bulk Sales Act" (*Chapter* 387, *Volume* 22, *Laws of Delaware*) was approved March 24, 1903. This act appears as *par.* 2638 (*Section* 18) of the *Revised Code* of 1915. It provided that "a sale of any portion of a stock of merchandise otherwise than in the ordinary course of trade in the regular and usual prosecution of the seller's business, or a sale of an entire stock of merchandise in bulk, will be presumed to be fraudulent and void as against the creditors of the seller," unless an inventory of the goods is made showing the cost price, and unless the purchaser shall at least five days before the sale inquire of the seller as to the names, addresses of all creditors and the amount owed to each, and obtain from the seller a written answer to such

inquiry; and unless the purchaser shall retain such inventory and written answer for at least six months and also, at least five days before the sale notify, or cause to be notified, each of the seller's creditors of the proposed sale, the cost price of the merchandise and the price to be paid therefor. If the seller makes false answer to the inquiry made of him by the purchaser, he is declared to be guilty of a misdemeanor. The act excepts from its operation sales by executors, administrators, receivers or any public officer acting in his official capacity.

The original act was re-enacted by *Chapter 222, Volume 29, Laws of Delaware*, approved April 17, 1917, with this one addition by way of amendment, viz. if the purchaser wilfully fails to make the inquiry of the seller as above described and to obtain the written answer thereto from the seller, or if the purchaser wilfully fails to give the prescribed notice to the seller's creditors, he is guilty of a misdemeanor, punishable by fine of not over one thousand dollars or imprisonment not exceeding five years, or both in the discretion of the court.

Neither the seller nor the purchaser made any effort to comply with this law. Failure to do so undoubtedly prejudiced the rights of creditors. One of the large creditors knew of the proposed sale. In fact, it was on the advice of this creditor that the new corporation was formed and the assets transferred. But at least two other large creditors and other creditors in the amount of from three thousand dollars to four thousand dollars were ignorant of the fact. The sale clearly falls within the condemnation of the statute, and is thereby stigmatized as fraudulent and void as against creditors.

In many of the states statutes of this character declare that the sale is not presumed to be, but is fraudulent and void. Authorities in such states are, therefore, of no value in construing the Delaware act, for in this state the statute declares that the sale is "presumed" to be fraudulent and void. Again, a statute such as is found in Georgia, where it is declared that the sale is "conclusively" presumed to be fraudulent, renders the decision of the Supreme Court of that state in *Jaques & Tinsley Co. v. Carstarphen Warehouse Co.*, 131 *Ga.* 1, 62 *S. E.* 82, of no inter-

pretative value in Delaware, at least so far as the nature of the presumption is concerned.

In Maryland, Illinois, Minnesota and Wisconsin the statutes are similar to the Delaware act, in that the sale is declared to be "presumed" to be fraudulent. The courts of last resort in those states have held that the presence of the words "presumed to be" in the statute makes the presumption a rebuttable one. *Hart v. Roney*, 93 *Md.* 432, 49 *Atl.* 661; *Fisher v. Hermann*, 118 *Wis.* 424, 95 *N. W.* 392; *Baumeisten v. Fink*, 141 *Ill. App.* 372; *Thrope v. Pennock Mercantile Co.*, 99 *Minn.* 22, 108 *N. W.* 940, 9 *Ann. Cas.* 229.

In each of those states, however, the statute contained a clause, not found in the Delaware act, providing in substance that except as therein provided, nothing in the act should affect or change the present rules of evidence or presumptions of law. The Court of Appeals of Maryland observed the presence of this clause, and found therein confirmation of its view that the statute was meant simply to create a presumption available to creditors who might seek to assail the transaction as fraudulent, a presumption, however, which was rebuttable by proof that the transaction was *bona fide*. In other words, it was held that the statute was designed solely to place the burden of proof on the purchaser to show that there was no fraud, instead of leaving the burden, as it was before, on the creditors to establish the fraud.

In the other states above mentioned, where a clause similar to the one in the Maryland act is found, the courts reach the same conclusion, though no special mention is made of the significant clause. The presence of such a clause in the statutes of those states must, however, have been given some interpretative value. At all events, the absence of this clause from the Delaware act is a distinguishing feature which differentiates our act from the acts in those states, and the rulings in those jurisdictions accordingly cannot be as persuasive here as they might otherwise be.

In Mississippi, South Carolina and Tennessee, however, notwithstanding the presence in their statutes of a clause declaring that, except as provided therein, nothing in the act should be construed to alter or change the existing rules of evidence, or the exising presumptions of law, the Supreme Court of each of these states

held that the presumption of fraud, in case no attempt was made to observe the requirements of the act, was conclusive and no evidence could be received to show the *bona fides* of the transaction. *Moore Drygoods Co. v. Rowe, et al.*, 97 *Miss.* 775, 53 *South.* 626; (on rehearing) 99 *Miss.* 30, 54 *South.* 659, *Ann. Cas.* 1913C, 1213; *National City Bank v. Husy & Martin Drug Co., et al.*, 113 *S. C.* 333, 102 *S. E.* 516; *Cantrell v. Ring*, 125 *Tenn.* 472, 145 *S. W.* 166.

In Mississippi and Tennessee, like Delaware, the language of the act is "shall be presumed to be fraudulent and void as against creditors," and in South Carolina the language is "shall *prima facie* be presumed to be fraudulent and void as against the creditors of such seller." The rulings in these three states, are therefore, because of the similarity of their statutes to ours in declaring that the fraud is presumed, of value in the construction of the Delaware act. The more so is this true because of the clause in their acts, absent in ours, which has been alluded to.

In North Carolina, the Supreme Court, in construing the statute of that state, where such sales are declared to be *"prima facie* evidence of fraud, and void as against the creditors of the seller," held that the presumption was a conclusive one. *Pennell v. Robinson*, 164 *N. C.* 257, 80 *S. E.* 417, *Ann. Cas.* 1915D, 77.

The construction to be given to each statute is dependent upon the view as to whether the statute attempts to merely lay down a rule governing the burden of proof in cases where fraud is charged as attending the sale in bulk, or whether it is meant to inhibit, as a matter of public policy, all such sales in bulk unless the regulations prescribed are complied with.

Where the act contains language which implies that the subject matter it was dealing with was rules of evidence and presumptions of law, as in Maryland, Wisconsin, Illinois and Minnesota, there is some reason to conclude that the presumption is not a conclusive one; though where such is the case, yet the courts of some states have, as above pointed out, declined to adopt such conclusion.

But when there is no such implication to be found in the language of the act, resort must be had to the general purpose the Legislature had in mind, the sort of evil it was trying to meet, and the adequacy of the act as construed to remedy it, for the proper construction of the presumption. If language is susceptible of two

constructions, that one may legitimately be adopted which will give efficacy to what the court conceives to have been the purpose which the Legislature sought to accomplish.

In the case of the statute now before the court, it is not specifically declared whether the presumption of fraud shall be a conclusive one, or a rebuttable one. It must be one or the other. The purpose of the act, as the court conceives it, was to make it impossible for those engaged in merchandising to circumvent their creditors by turning their goods into cash by sales in bulk made out of the ordinary course of business. It is common knowledge that merchants operate to a large extent on credit and, to those who might be so disposed, a facile means of getting easy money would be to acquire a stock of goods largely on credit and later dispose of the same for cash and leave the creditor who supplied them to find the cash if he could. That such frauds had been perpetrated to an alarming extent is best evidenced by the fact that in nearly every state of the Union laws similar to the one now under discussion have been enacted.

To say that if such sales are made without compliance with the statute, the creditor shall have the benefit of a *prima facie* case of fraud in his favor does not afford him much relief; for, if that be the extent of the statutory remedy, his *prima facie* case against the purchaser may be destroyed by a showing of *bona fides* on his part, and the dishonest seller may secrete the money. The creditor is thus without relief. And if the *prima facie* case could not be overcome because of a lack of *bona fides* on the part of the purchaser, then the statute would prove of little value, for in such case there would have been fraud which the creditor, at least in many instances could show anyhow and thus create his own *prima facie* case without the aid of the statute. I am not unmindful of the difficulty of proving fraud, nor am I disposed to speak slightingly of the value of a statutory rule that the creditor may cast the burden of proof on the purchaser merely by challenging the sale. At the same time, fraud in such matters as are now under consideration is not so hard to make out as might be supposed, for it is to be remembered that, in the absence of a "Bulk Sales Act," a sale of goods in bulk out of the ordinary way of business, or in an unusual manner, has been held to be a badge of fraud, and being such may

in itself, without the aid of any statute, be of value in calling upon the purchaser to explain. *Walbrun v. Babbit*, 16 *Wall.* 577, 21 *L. Ed.* 489; *Dokken v. Page*, 147 *Fed.* 438, 77 *C. C. A.* 674; *Hoffer v. Gladden*, 75 *Ga.* 532. If this be true, what is the necessity of the statute, if all it does is to raise a *prima facie* case of fraud.?

I hold the purpose of the act was not to interfere with existing rules of evidence, and the burden of proof in cases of fraud, but to lay down regulations which must be complied with in all such sales as are contemplated by the act, at the peril of having the same overturned by objecting creditors. Any other construction would render the act valueless.

The act may impose a little inconvenience on purchasers, but the Legislature foresaw no unreasonable hardship in its operation. If persons desire to make a kind of purchase which experience teaches is of a type that has frequently been employed by dishonest men to cheat their creditors, it was evidently thought not unreasonable to require that before the purchase is completed creditors should be notified. Such seems to the court to have been the view of the General Assembly in the enactment of this statute, and the act is to be construed accordingly.

Not only because of what has been already said is this court inclined to hold the presumption to be conclusive, but also for a further reason founded in a feature of the Delaware act not met with in other jurisdictions. I refer to that paragraph of the act which subjects the purchaser to a fine of not more than one thousand dollars, or imprisonment of not more than five years, or both in the discretion of the court, if he wilfully neglects to make the required inquiry of the seller as to his creditors, or to give them the required notice.

What is the significance of this provision? Is it not an indication that the Legislature was intending to lay down positive rules and regulations which must in all cases be observed? So imperative are the requirements, that fine or imprisonment, or both, may be visited on him who disregards them. If the presumption of fraud was to be of a rebuttable nature only, it is hardly conceivable that this penal clause would have been adopted. If the presumption is rebuttable, then let it be imagined what might happen in a supposed case. Let a case be supposed of a purchaser

of a stock of merchandise who makes no attempt whatever to comply with the requirements of the act. A presumption of fraud is thereupon raised against him, and the creditors of the seller pursue the goods. But let it be supposed that the purchaser rebuts the presumption by a showing of perfect *bona fides*. In that event, the goods cannot be reached by the creditors. But the purchaser, not having done the things prescribed, is liable to indictment for his failure so to do. The result in such a supposed case is, that the creditors cannot disturb the goods and chattels but can put their owner in jail. I cannot conceive that the Legislature of this state ever intended to employ language in such a sense as would permit of an incongruous possibility of this kind. A construction of the act which views it as a body of substantive law regulating the matter of sale of the kind contemplated avoids such absurd possibility as is above indicated.

In view of the foregoing, it is not necessary for me to discuss the facts in the light of the other contention urged by the complainant, namely, that as a matter of law, regardless of the "Bulk Sales Act," the transfer to the Appliance Company is fraudulent and void as against the creditors of the Electric Company. This much, I may say, however, that if the case rested on this contention alone, still I would be constrained to declare the transfer void. It was arranged by the same set of officers acting for both companies, the transferring corporation was heavily insolvent, a large and substantial portion of its assets was turned over to another corporation whose assets consisted only of the property it was receiving by the transfer; the property remained in the same place where the transferor continued to appear to do business; the transferring corporation received nothing in exchange for the property, except shares of stock in the new company; and the creditors of the old company were in no wise secured. That they were delayed and hindered in the collection of their debts is manifest. Whereas before they could look to the assets, now they could look only to their equivalent in stock of the new company. And this stock, behind which were these particular assets and nothing more, by reason of the arrangement of the officers by which they issued to themselves stock in a total amount exceeding that issued to the transferring company, would be

worth far less in liquidation than the assets transferred. The Electric Company turned over its assets for one hundred and fifty-three shares of stock of the new company. These shares, being the total then outstanding, therefore represented all the assets of the new company. But the officers issued to themselves two hundred and forty shares, giving notes therefor, which notes are yet unpaid. Thus the Electric Company which had lost control of these assets, also lost control of the new corporation, which now has the assets. At first the Electric Company, as stockholder in the new company, had one hundred per cent. interest in the property transferred, but when the officers issued to themselves the two hundred and forty shares, the assets of the new company remaining the same, the Electric Company's interest in them, as a stockholder, dwindled from one hundred per cent. to less than forty per cent. Not only was a substantial amount of the assets of the Electric Company removed from the reach of its creditors, but its share in the new company, available to its creditors for whatever it was worth, was reduced by more than one-half by the officers who gave notes for stock.

This transaction could not stand in a court of equity. It matters not how innocent the officers may have been. The effect of their conduct was to hinder and delay, and, as a matter of law, defraud the creditors of the Electric Company. 6 *Thompson on Corporations*, (2d Ed.) § 6292, *p.* 1121; *Hibernia Ins. Co. v. St. Louis, etc., Co.*, (C.C.) 13 *Fed.* 516; *Bourgeois v. Risley Real Estate Co.*, 82 *N. J. Eq.* 211, 88 *Atl.* 199.

A receiver appointed under the authority of *Section* 3883 of the *Revised Code of* 1915 (as was the complainant in this cause), represents not alone the corporation of which he is receiver, but as well the interests of all creditors. He becomes a *quasi* assignee of the corporation. *Cooney Co. v. Arlington Hotel Co.*, 11 *Del. Ch.* 286, 101 *Atl.* 879. Such receiver may sue to set aside corporate transfers and conveyances made in fraud of creditors. *Curtis v. Lewis*, 74 *Conn.* 367, 50 *Atl.* 878; *Bradley v. United Wireless Tel. Co.*, 79 *N.J. Eq.* 458, 81 *Atl.* 1107; *Richardson v. Gerli*, 54 *Atl.* (*N. J. Ch.*) 438; 8 *Fletcher's Cyc. of Corporation*, § 5330, *p.* 8938.

The sale and transfer were fraudulent and void, and the property and assets so sold and transferred are the property and estate of

the Sterling Electric Company, and as such belong to the receiver of that company for the benefit of its creditors and stockholders, and the defendant must deliver the same to the complainant.

Let a decree be prepared declaring the sale and transfer fraudulent and void; that the property is the property of Sterling Electric Company, as prayed in the bill; and that the same be delivered by the defendant to the complainant. The permanent injunction restraining the disposing of the property, as prayed for, will also issue.